```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MBIA INSURANCE CORPORATION,                :
                         Plaintiff,        :
v.                                         :
                                           :     OPINION AND ORDER
                                           :
NATIONSTAR MORTGAGE LLC, d/b/a Mr.         :     18 CV 938 (VB)
Cooper, n/k/a Mr. Cooper,                  :
                         Defendant.        :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff MBIA Insurance Corporation ("MBIA") brings this action against defendant Nationstar Mortgage LLC, doing business and now known as Mr. Cooper ("Nationstar"), asserting state-law claims for breach of contract, indemnification, and declaratory relief.

Before the Court is Nationstar's motion to dismiss the amended complaint pursuant to Rule 12(b)(6).  (Doc. #20).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.[1]

---

[1] Nationstar has requested the Court take judicial notice of certain court filings.  (Doc. #23).  The Court takes judicial notice of those materials as public records.  See, e.g., Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (collecting cases).  Matters subject to judicial notice properly are considered on a Rule 12(b)(6) motion.  See id.

1

I. The Trusts and the Parties

   A. The Trusts

This contractual dispute concerns four trust funds funded by the collection of residential mortgage payments: CWHEQ Home Equity Loan Asset Backed Certificates, Series 2006-S8, Series 2006-S9, Series 2007-S1, and Series 2007-S2 (collectively, the "Trusts"). The Trusts are governed by materially identical Pooling and Servicing Agreements ("PSA") that establish the Trusts' structure, operation, and administration.[2]

Together, the Trusts have issued several billion dollars' worth of residential mortgage backed securities ("RMBS"), also known as Certificates. The Certificates are held by investors, also known as Certificateholders, and convey an interest in the Trusts' residential mortgage assets.

   B. Bank of New York Mellon

Nonparty Bank of New York Mellon ("BNYM") serves as the Trusts' Trustee, to which the PSAs assign authority to administer the Trusts. As Trustee, BNYM disburses funds from the Trusts' accounts pursuant to "distribution priorities" established by the PSAs. (Am. Compl. ¶ 24).

   C. Nationstar Mortgage LLC

Defendant Nationstar served as the Trusts' Master Servicer at all relevant times. The Master Servicer is responsible for the Trusts' daily operations. Its ambit includes servicing the

---

[2] The parties agree the PSAs are identical for purposes of this case. For ease of reference, the Court refers to the PSA governing the Series 2007-S1 trust. Because the PSAs are integral to the amended complaint, which "relies heavily" on the PSAs' "terms and effect," the Court properly considers the PSAs' text for purposes of the motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

Trusts' residential mortgages (including by collecting payments, foreclosing on mortgaged properties, and selling charged off loans) and maintaining Trust accounts into which the Master Servicer deposits and transfers Trust funds.

Among the accounts established and maintained by the Master Servicer are each Trust's Certificate Account. Section 3.05(b) of the PSAs obliges the Master Servicer to deposit into the Certificate Accounts income from the Trust's residential mortgage assets, among other things. Funds in the Certificate Accounts are "held in trust for the Certificateholders and the Certificate Insurer for the uses and purposes set forth in [the PSAs]." (Doc. #22-1 ("PSA") at 17).[3]

The PSAs provide that the Trustee "shall be indemnified by the Master Servicer and held harmless against any loss, liability or expense . . . incurred in connection with any legal action relating to" the PSAs or Certificates. (PSA at 197). Pursuant to this obligation, Nationstar has indemnified BNYM for the attorneys' fees BNYM incurred in connection with three lawsuits filed against it by Certificateholders (the "underlying lawsuits"),[4] in a total amount of at least $6.8 million.

### D. MBIA

Plaintiff MBIA serves as the Trusts' Certificate Insurer and is an express third-party beneficiary to the PSAs. As Certificate Insurer, pursuant to the Trusts' insurance policies (the "Insurance Agreements"), MBIA must pay insurance claims filed when one or more of the

---

[3] Citations to a PSA or Insurance Agreement refer to page numbers assigned by the Court's Electronic Case Filing system.

[4] See W. & S. Life Ins. Co. v. Bank of N.Y. Mellon, No. A1302490 (Oh. Ct. Com. Pl., Hamilton Cty.); Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon, No. 11-cv-05459 (S.D.N.Y.); Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon, No. 14-cv-9372 (S.D.N.Y.). These cases also concerned trusts not at issue in the instant case.

3

Trusts lack sufficient funds to pay full distributions to the Certificateholders. In other words, MBIA must compensate the Trusts' investors when they submit valid claims for losses suffered due to a shortfall in the Trusts' Certificate Accounts.[5]

MBIA may exercise legal rights as both a party to the Insurance Agreements and an express beneficiary to the PSAs. In addition, when MBIA makes payments to Certificateholders due to a shortfall caused by a third party's wrongful conduct, MBIA assumes by subrogation the Certificateholders' right to sue the third party for damages.

II.  The Disputed Reimbursements

This lawsuit arises from withdrawals Nationstar made from the Trusts' Certificate Accounts. Specifically, Nationstar has repeatedly reimbursed itself (the "disputed reimbursements") for its indemnification of BNYM's litigation expenses in the underlying lawsuits.

Because the Certificate Accounts hold money used for distributions to Certificateholders, the disputed reimbursements caused the Certificateholders to suffer a shortfall. In turn, the Certificateholders submitted insurance claims to MBIA. According to the amended complaint, MBIA has paid out approximately $6.8 million on those claims to make the Certificateholders whole.

MBIA alleges the disputed reimbursements came to light over time. In December 2016, while reviewing a monthly report generated by Nationstar, MBIA allegedly realized Nationstar had deducted from the Trusts at least $2 million "connected to performing mortgage loans."

---

[5]  As with the PSAs, the parties agree the Trusts' Insurance Agreements are identical for purposes of this case; the parties refer to the Insurance Agreement governing the Series 2007-S1 trust; and the Insurance Agreements are integral to the amended complaint and thus properly considered for purposes of deciding the motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111.

(Am. Compl. ¶ 35). MBIA later learned those deductions totaled "closer to $3 million" as of December 2016. (Id.).

MBIA alleges Nationstar tried to conceal the deductions by labelling them a "dummy loan" in its internal accounting reports. (Am. Compl. ¶ 36). Nationstar allegedly amended those reports after BNYM "took issue with the 'dummy loan' entry." (Id.). MBIA claims Nationstar's remittance reports also labeled as "Additional Losses" the Trust funds with which Nationstar reimbursed itself for its indemnity payments to BNYM, despite the fact that the term "additional losses" does not appear in the Trusts' governing documents. (Id. ¶ 37).

MBIA alleges it discovered that the "additional losses" entries in fact referred to Nationstar's self-reimbursements using Trust money. According to MBIA, it then informally contacted Nationstar in an attempt to dissuade Nationstar from continuing to reimburse itself for indemnifying BNYM, and to convince Nationstar to repay MBIA for its insurance claim payments to the Certificateholders caused by Nationstar's disputed withdrawals. MBIA's efforts were unsuccessful, and Nationstar continued reimbursing itself in an additional approximate amount of $3.5 million.

At the time this action was commenced, MBIA had identified $6,794,690 that Nationstar allegedly diverted improperly from the Trusts: $1,612,301 from each of Series 2006-S8, Series 2006-S9, and Series 2007-S1; and $1,957,787 from Series 2007-S2. MBIA claims Nationstar also has taken additional reimbursements in unknown amounts.

In November 2017, pursuant to the PSAs, MBIA formally notified Nationstar of numerous alleged contractual defaults related to the disputed reimbursements and demanded Nationstar cure those defaults. In response, Nationstar asserted the PSAs afford it the right to reimburse itself with Trust money for its indemnification of BNYM.

5

**DISCUSSION**

I.       Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the U.S. Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, a complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.      Limitation on Liability Clause

As a threshold matter, Nationstar argues a limitation on liability clause in the PSAs renders Nationstar immune from MBIA's claims.  MBIA argues the clause does not apply here, and that even if it does, MBIA has adequately pleaded its claims.

Assuming, without deciding, that the clause does apply, MBIA has plausibly alleged Nationstar acted with mens rea sufficient to trigger liability.

6

Section 6.03 of the PSAs limits the Master Servicer's liability for the Master Servicer's conduct pursuant to the PSAs. It provides:

> [T]he Master Servicer . . . shall [not] be under any liability to . . . the Trust Fund or the Certificateholders for any action taken or for refraining from the taking of any action in good faith pursuant to this Agreement, or for errors in judgment; provided that this provision shall not protect the . . . Master Servicer . . . against any breach of representations or warranties made by it herein or protect the . . . Master Servicer . . . from any liability that would otherwise be imposed by reasons of willful misfeasance, bad faith or gross negligence in the performance of duties or by reason of reckless disregard of obligations and duties hereunder.

(PSA at 183–84). Thus, Section 6.03 does not shield the Master Servicer from liability for willful misfeasance, bad faith, gross negligence, or reckless disregard.

The amended complaint alleges Nationstar "actively sought to conceal and cover up" the disputed reimbursements by making "false and/or misleading entries" on remittance reports. (Am. Compl. ¶ 74). Specifically, MBIA alleges that Nationstar's descriptions of the disputed reimbursements as a "dummy loan" and then as "[a]dditional [l]osses" indicate Nationstar acted willfully or with reckless disregard for its contractual obligations. (Id. ¶¶ 36–37). MBIA also alleges it informally invited Nationstar to cease the disputed reimbursements and to compensate MBIA for its payouts to Certificateholders, but Nationstar refused and then deducted another $3.5 million from the Trusts. The amended complaint further asserts MBIA then formally notified Nationstar of its alleged defaults under the PSAs, in response to which Nationstar again stated it had acted within its contractual rights.

Construing these assertions in the light most favorable to MBIA, the amended complaint plausibly alleges Nationstar committed willful misfeasance or acted with bad faith, gross negligence, or reckless disregard to its contractual obligations as Master Servicer. Cf. BNP Paribas v. Bank of N.Y. Trust Co., N.A., 2012 WL 13059498, at *15–16 (S.D.N.Y. Mar. 28, 2012).

The Court therefore declines to dismiss the amended complaint on the ground that the PSAs' limitation on liability clause bars MBIA's claims.

III. Interpreting the Indemnity Clauses

The parties also dispute the standard by which the Court, applying New York law,[6] must interpret the contractual indemnity clauses on which MBIA's claims rest.

Generally, New York courts interpret a contractual indemnity clause in light of its ordinary meaning and the contracting parties' intent. See, e.g., JFURTI, LLC v. First Capital Real Estate Advisors, L.P., 165 A.D.3d 419, 420–21 (1st Dep't 2018). However, MBIA invokes the more exacting legal standard established by the New York Court of Appeals in Hooper Associates v. AGS Computers, 74 N.Y.2d 487 (1989), which held certain indemnity agreements should be enforced as between contracting parties only when it is "unmistakably clear" the contracting parties so intended. See id. at 491–92.

The Court finds the "unmistakably clear" standard inapplicable. "[T]he Hooper Associates standard does not apply" to "attorneys fees incurred in underlying litigation with third parties." CBS Corp. v. Eaton Corp., 2010 WL 1375169, at *4 (S.D.N.Y. Mar. 30, 2010). Rather, Hooper Associates applies to indemnity provisions that shift "legal expenses for a suit between the contracting parties," in contravention of the "American Rule" that litigating parties ordinarily must bear their own litigation expenses. See In re Refco Securities Litig'n, 890 F. Supp. 2d 332, 340–44 (S.D.N.Y. 2012) (emphasis added).

Here, each of the underlying lawsuits pitted Certificateholders against BNYM as Trustee. Because the Certificateholders are not parties to the PSAs at issue in the instant lawsuit,

---

[6] The PSAs and Insurance Agreements provide they are to be governed by New York law. (PSAs at 221; Ins. Agmt. at 37). The parties agree New York law applies.

8

BNYM's litigation expenses in the underlying lawsuits are not "legal expenses for a suit between the contracting parties." In re Refco Securities Litig'n, 890 F. Supp. 2d at 344. Instead, the underlying lawsuits were third-party actions. See Homeward Residential, Inc. v. Sand Canyon Corp., 298 F.R.D. 116, 133 (S.D.N.Y. 2014) (citing Ret. Bd. of Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon, No. 11-cv-5459 (S.D.N.Y.)) (labelling one of the underlying lawsuits against BNYM a third-party action for purposes of Hooper Associates). Such actions do not trigger Hooper Associates's "unmistakably clear" standard.

The Court therefore will not apply the "unmistakably clear" standard to the indemnity provisions contested in this case.

IV.    Breach of Contract Claim

MBIA alleges the PSAs do not authorize the disputed reimbursements. Nationstar, however, contends the PSAs do authorize the disputed reimbursements, and that MBIA therefore fails plausibly to allege those reimbursements constituted a breach of contract.

Nationstar offers two arguments in support of its position, both of which the Court rejects at this early procedural stage.

   A.    Sections 6.03 and 3.08(a)(viii)

First, Nationstar argues Sections 6.03 and 3.08(a)(viii) of the PSAs together authorize the disputed reimbursements.

The Court is not persuaded.

Section 6.03 of the PSAs requires the Trusts to indemnify the Master Servicer for

> any loss, liability or expense incurred in connection with . . . any legal action relating to this Agreement or the Certificates, other than . . . any loss, liability or expense incurred by reason of willful misfeasance, bad faith or gross negligence in the performance of duties [under the PSAs] or by reason of reckless disregard of obligations and duties [under the PSAs].

9

(PSA at 184). The PSAs also specify the funds used to provide this indemnity: Section 3.08(a)(viii) authorizes the Master Servicer to reimburse itself with money from the Certificate Accounts for its expenses "reimbursable pursuant to Section 6.03." (Id. at 133).

MBIA plausibly alleges these provisions, by their plain meaning, grant the Master Servicer an indemnity right triggered <u>only</u> when the Master Servicer directly participates in and spends money on a lawsuit. Here, Nationstar was not a party to the underlying lawsuits, nor did the underlying lawsuits concern expenses Nationstar incurred in connection with its obligations respecting the Trusts' mortgages or certificates.

Further, to the extent Sections 6.03 and 3.08(a)(viii)'s plain meaning does not resolve the breach of contract claim, the amended complaint alleges it "has always been understood by all parties" that the PSAs do not authorize the Master Servicer to reimburse itself for indemnity payments to the Trustee, as evidenced by the conduct of a prior Master Servicer that did not reimburse itself for such indemnity payments. (Am. Compl. ¶ 45). Taking these allegations as true, they plausibly evidence a course of performance that supports MBIA's breach of contract claim—and under New York law, course of performance serves as persuasive evidence of the contracting parties' intent. See <u>Haughton v. Cognisight, LLC</u>, 953 F. Supp. 2d 478, 487–88 (W.D.N.Y. 2013) (collecting cases) (applying New York law).

B. <u>Section 3.08(a)(vi)</u>

Second, Nationstar argues Section 3.08(a)(vi) of the PSAs independently authorizes the disputed reimbursements, rendering MBIA's breach of contract claim implausible.

The Court disagrees.

Section 3.08(a)(vi) entitles the Master Servicer to make withdrawals from the Certificate Accounts to reimburse itself for "unreimbursed Servicing Advances" (PSAs at 132). The PSAs

require the Master Servicer to "keep and maintain [a] separate accounting" justifying each such withdrawal "on a Mortgage Loan by Mortgage Loan basis." (Id. at 134).

Nationstar contends the disputed reimbursements meet the "Servicing Advances" definition and thus are proper. "Servicing Advances" means

> [a]ll customary, reasonable and necessary "out of pocket" costs and expenses incurred in the performance by the Master Servicer of its servicing obligations hereunder, including, but not limited to, the cost of (i) the preservation, restoration and protection of a Mortgaged Property, (ii) any enforcement or judicial proceedings, including foreclosures, (iii) the management and liquidation of any REO Property, (iv) auction costs and expenses in connection with Charged-off Mortgage Loans and (v) compliance with the [Master Servicer's] obligations under Section 3.10 [to maintain hazard insurance for each Mortgage Loan].

PSAs at 61–62 (emphasis added). The phrase "servicing obligations" is not defined in the PSAs. However, the Master Servicer's servicing obligations are set forth in Article III of the PSAs. Section 3.01 speaks of the Master Servicer's duty to "service and administer the [Trusts'] Mortgage Loans" (id. at 118), and Section 3.02 authorizes the Master Servicer to "arrange for the subservicing of any Mortgage Loan by a subservicer" (id. at 121). Each of the five enumerated categories of costs listed in the "Servicing Advances" definition arises directly from the Master Servicer's conduct respecting individual mortgages or mortgaged properties. (See id. at 61–62). And the Master Servicer must justify any withdrawal taken under Section 3.08(a)(vi) by referencing in a "separate accounting" the specific mortgage loan or loans to which each such withdrawal corresponds. (Id. at 134).

These provisions plausibly suggest the Master Servicer's "servicing obligations" pertain only to individual mortgages or mortgaged properties owned by the Trusts. Because the disputed reimbursements did not arise from Nationstar's servicing of individual mortgages or mortgaged properties, those reimbursements plausibly are not "Servicing Advances" under the PSAs.

Accordingly, the Court will not dismiss MBIA's breach of contract claim.

V. <u>Indemnity Claim</u>

As an alternative to its breach of contract claim, MBIA alleges the Insurance Agreements require Nationstar to indemnify MBIA for MBIA's $6.8 million insurance claim payments to Certificateholders.

Nationstar argues MBIA fails adequately to plead this indemnity claim.

The Court agrees.

The Insurance Agreements' indemnity clause requires the Master Servicer to indemnify the Certificate Insurer for

> any and all reasonable charges, fees, costs and expenses that the Insurer may reasonably pay or incur . . . in connection with . . . any action, proceeding or investigation that could reasonably be expected to have material adverse effect on . . . the rights or obligations of the Insurer under the Policy or the Transaction Documents.

(Doc. #22-2 ("Ins. Agmt.") at 25).[7]

The Court finds implausible MBIA's allegation that its insurance payments to Certificateholders qualify as expenses "incur[red] in connection with" the underlying lawsuits against BNYM as Trustee. (Ins. Agmt. at 25). To the contrary, the relationship between the underlying lawsuits and MBIA's insurance payments is highly attenuated: the insurance payments occurred because (i) BNYM incurred litigation expenses that (ii) triggered Nationstar's indemnity payments to BNYM, for which (iii) Nationstar reimbursed itself using money from the Certificate Accounts, which in turn (iv) caused Certificateholders to suffer a shortfall, as a result of which (v) the Certificateholders' submitted insurance claims to MBIA, generating (vi)

---

[7] The Insurance Agreements' indemnity clause in fact imposes obligations on both the Master Servicer and "the Seller," here Countrywide Home Loans, Inc. ("Countrywide"). (Ins. Agmt. at 25). The parties do not address Countrywide's potential obligations as Seller under the Insurance Agreements' indemnity clause.

MBIA's insurance claim payouts to Certificateholders. The Court finds that the Insurance Agreements' indemnity clause, by its plain meaning, does not cover expenses so distantly removed from a lawsuit of the type the indemnity clause describes.[8]

Accordingly, MBIA's indemnity claim under the Insurance Agreements is dismissed for failure to state a claim.[9]

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART. The breach of contract claim and declaratory relief claim will proceed. The indemnity claim is dismissed.

The Clerk is directed to terminate the motion. (Doc. #20).

By February 12, 2019, Nationstar shall answer the amended complaint.

Dated: January 29, 2019
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[8] To be sure, Nationstar's indemnity payments for BNYM's litigation expenses also did not arise directly from a Trust-related lawsuit. Rather, they arose from Nationstar's contractual indemnity obligation to BNYM as Trustee. But Nationstar's indemnity payments bear a much closer relationship to the underlying lawsuits, and thus plausibly are described as incurred "in connection with" those lawsuits. Nationstar indemnified BNYM for its litigation expenses; MBIA paid insurance claims submitted by Certificateholders for losses caused by Nationstar's withdrawals from the Trusts to reimburse itself for indemnifying BNYM for its litigation expenses.

[9] Nationstar asserts in a footnote that MBIA's claims for indemnification and declaratory relief are "duplicative and derivative" of the breach of contract claim. (Br. at 25). Nationstar offers no further explanation and provides no supporting citations. Accordingly, the Court denies Nationstar's request that the declaratory and indemnity claims be dismissed as duplicative.